UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division



UNITED STATES OF AMERICA

v.  Criminal No. 4:10cr55

DIMAS ROMERO,

Defendant.

## MEMORANDUM OPINION

This matter is before the court on an objection to the Sentencing Guidelines calculation set forth in defendant's presentence investigation report ("PSR"). On June 14, 2010, defendant Dimas Romero ("Romero") pled guilty, without a plea agreement, to Count One of the Indictment charging him with Reentry of a Removed Alien, in violation of Title 8, United States Code, Section 1326(a). The court accepted the guilty plea, the defendant was found guilty, and the matter was continued for sentencing. After Romero's PSR was completed, on September 7, 2010, the court conducted a sentencing hearing. At the hearing, defendant objected to the application of an 8-level enhancement to his offense level based on the classification of his prior state court felony conviction as an "aggravated felony." U.S.S.G. § 2L1.2(b)(1)(C). Defendant argued that he only qualified for a 4-level enhancement for previously having been convicted of "any other felony." U.S.S.G. § 2L1.2(b)(1)(D).[1]

While addressing this objection at the sentencing hearing, it became clear for the first time that the government had a different objection to the 8-level increase, arguing that Romero

---

[1] It is undisputed that Romero was previously convicted of felony assault and battery of a police officer. Such "simple assault" would otherwise have been a misdemeanor under Virginia law; however, such crime is enhanced to a felony when the victim is a police officer, judge, firefighter, or other named official. Va. Code § 18.2-57(C).

actually qualified for a 16-level enhancement that applies to prior convictions for felony "crimes of violence." U.S.S.G. § 2L1.2(b)(1)(D). As the defendant had not had the opportunity to fully research the propriety of a 16-level enhancement, and because the application of such enhancement would more than doubled the sentence recommended by the Guidelines, the defendant moved for a continuance. The court granted such motion and set a briefing schedule for supplemental filings.

After receiving the parties' supplemental briefs, on October 18, 2010, the defendant again appeared in person, with counsel, for sentencing. As explained on the record at such hearing, the court ultimately concluded that application of the 8-level enhancement for an "aggravated felony" was appropriate in this case. The court's reasoning for such findings is set forth below.

### I. Definitions: "Crime of Violence" vs. "Aggravated Felony"

Under the application notes to the relevant guideline section, a "crime of violence" is defined as: "murder, manslaughter, kidnaping, aggravated assault, . . . robbery, arson, extortion . . . or any other offense under federal, state or local law <u>that has as an element the use, attempted use, or threatened use of physical force against the person of another</u>." U.S.S.G. § 2L1.2 App. n.1 (B)(iii) (emphasis added). A crime of violence warrants a 16-level enhancement.

Under the application notes to the relevant guideline section, the definition of an "aggravated felony" is cross referenced to 8 U.S.C. § 1101(a)(43), which is then cross referenced to 18 U.S.C. § 16. See U.S.S.G. § 2L1.2 App. n.3; 8 U.S.C. § 1101(a)(43)(F). Title 18, United States Code, Section 16, provides:

The term "crime of violence" means--

(a) <u>an offense that has as an element the use, attempted use, or threatened use of</u>

2

physical force against the person or property of another, or[2]

    (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16 (emphasis added). An "aggravated felony" warrants an 8-level enhancement.

Based on the above, if Romero was previously convicted of an offense that has <u>as an element</u> the use of physical force against another, the guidelines appear to require a 16-level enhancement. U.S.S.G. § 2L1.2 App. n.1(B)(iii); 18 U.S.C. § 16(a). If, however, as set forth in 18 U.S.C. § 16(b), Romero was convicted of an offense that does not have the use of force as an element, but still, <u>by its nature</u> involves a substantial risk that physical force will be used in the commission of such offense, the guidelines require an 8-level enhancement.

## II. Background of the Modified Categorical Approach

In determining whether Romero's prior state offense has <u>as an element</u> the use of physical force against another, the parties agree that this court must apply the "modified categorical approach." The Fourth Circuit, in <u>United States v. White</u>, 606 F.3d 144, 148 (4th Cir. 2010), recently recognized that "assault and battery" offenses under Virginia law cannot be said to <u>categorically</u> have as an element the use of physical force, as a conviction can be based merely upon an "offensive touching." Accordingly, physical force <u>is an element</u> only for a subset of offenses under such statute. When determining whether the offense at issue falls within such subset, the "modified categorical approach" prohibits the court from engaging in factfinding, and

---

[2] Although this case does not require the court to resolve such issue, the court notes the apparent contradiction caused by the near identical text of the definitions highlighted above. Tellingly, according to one guideline provision, "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another" is defined as an "aggravated felony," whereas according to another guideline provision, virtually the exact same language is used to define a "crime of violence."

3

instead limits the court to the consideration of certain conclusive judicial records. See Shepard v. United States, 444 U.S. 13, 26 (2005) (indicating that when a district court is applying the modified categorical approach to an offense that a defendant previously pled guilty to, the court is "limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information"); Taylor v. United States, 495 U.S. 575, 602 (1990) (indicating that a district court should not engage in factfinding, but may consider charging documents and jury instructions); see also United States v. Harcum, 587 F.3d 219, 223 (4th Cir. 2009) ("A sentencing court's ability to utilize the modified categorical approach-and thus extend its analysis to factors beyond the fact of conviction and the statutory definition of the offense-is substantially circumscribed.").

Here, the question is whether a state-court PSR is a "comparable judicial record" to charging documents, jury instructions or other conclusive judicial records that contain the facts that formed the basis for a finding of guilt. See United States v. Pettiford, 612 F.3d 270, 279 (4th Cir. 2010) (quoting Shepard, 444 U.S. at 26) ("[T]o determine whether a conviction constitutes a violent felony, a court may not go 'beyond conclusive records made or used in adjudicating guilt . . . .'") (emphasis added). This court is not aware of any Fourth Circuit cases that squarely address the issue of whether a state-court PSR is an appropriate document to consider under Shepard and Taylor.

### III. Analysis

#### A. State-Court PSR as a Shepard/Taylor Approved Source

As highlighted by the government, it appears that the Tenth, Eleventh, and D.C. Circuits

have all held, with limited explanation, that a "presentence report adopted by the [state] court" can be later considered by a district court under the modified categorical approach. United States v. Smith, 10 F.3d 724, 733-34 (10th Cir. 1993); United States v. Spell, 44 F.3d 936, 939 (11th Cir. 1995); United States v. Richardson, 161 F.3d 728, 738 (D.C. Cir. 1998). Notably, these cases do not provide a detailed analysis on such point, nor do any of the cases involve the application of a sentencing enhancement based solely on information contained in a state-PSR. Furthermore, the opinion in Spell merely quotes from Smith, and all three opinions appear to require that the state-court PSR was previously "adopted" by the state-sentencing court.

In more recent cases, decided after Shepard, several circuit courts have held that a state-PSR is not a Shepard approved source that can be considered by a district court under the modified categorical approach. The Second Circuit recently held: "The State PSR here does not provide a basis for determining the nature of the defendant's conduct any better than does a police report, which, the Shepard Court ruled, does not define the conduct to which a defendant eventually pleads guilty." United States v. Rosa, 507 F.3d 142, 156-57 (2d Cir. 2007) (citations omitted). The Rosa opinion further explained that "like the police reports in Shepard, neither the police reports from which the State PSR drew support nor the [witness] accounts" recorded therein were mentioned at the defendant's plea hearing. Id. at 157. The Second Circuit did acknowledge that <u>if it was clear from the record</u> that "a state presentence report were adopted by the state trial court without objection by the defendant," than Shepard's requirement that the defendant "assent" to factual findings "might be met." Id. at 157 n.13. However, because the record before the court in Rosa failed to establish that the state PSR was actually adopted by the state court, the district court's reliance on the facts contained therein was "misplaced." Id.

Similar to the analysis in Rosa, a case from the Eighth Circuit suggests that consideration of state-PSRs is not permissible under Shepard. United States v. Lockwood, 446 F.3d 825 (8th Cir. 2006). In Lockwood, the court explained that "[t]he state probation reports were prepared after [the defendant's] guilty plea conviction [and he] never confirmed the factual allegations contained therein, stating instead that because of his intoxicated state he had no memory of the incident." Id. at 826. Furthermore, the "facts in the state probation reports were attributed to inadmissible sources," including information gleaned from the prosecutor's file. Id. at 828. Accordingly, the state probation reports were not "comparable judicial records that satisfy the modified categorical approach mandated by Taylor and Shepard." Id. at 828; see also United States v. Hunter, 511 F. Supp. 2d 961, 966 (N.D. Iowa 2006) (excluding the state-court PSR pursuant to Shepard because the information contained therein was "based on a variety of evidence, including interviews with various persons" and it therefore "lacks the reliability and conclusiveness of the government's other exhibits," which included charging documents and transcripts).

Here, the court has not been presented with charging documents, jury instructions, or transcripts from Romero's state-court proceedings. It likewise has not been presented "findings of fact," nor any other court documents that constitute "'conclusive records made or used in adjudicating guilt.'"[3] Pettiford, 612 F.3d at 279 (quoting Shepard, 544 U.S. at 21). There is also no evidence that Romero ever "assented to" the facts contained in the state-PSR, nor evidence that the state-court formally adopted those facts. Rather, all this court has is the argument by the

---

[3] Although the parties initially indicated to the court that Romero pled guilty to the state assault and battery charge, it was revealed to the court for the first time at the second sentencing hearing that Romero had actually been found guilty in state court subsequent to a trial.

Assistant United States Attorney that the state court "must have" adopted and relied on the state-PSR and that Romero "must have" previously had the opportunity to challenge the accuracy of the facts contained in such document.[4]

After considering the cases cited above, and the parties' respective arguments, the court finds that the 16-level enhancement is not appropriate in this case for the following reasons:

(1) This court previously continued this matter and the government has been on notice for several weeks that the defendant challenged the propriety of relying on the state-court PSR. The government has, however, failed to utilize such continuance to obtain any transcripts or other reliable records from the state court that could have resolved this issue without resorting to speculation.

(2) As in Lockwood, here, the pertinent information in the state-court PSR came directly from police records, a source deemed unreliable in Shepard. Without any evidence that the defendant previously confirmed the accuracy of such statements, or that they were adopted by the state court, such facts should not be considered by this court.

(3) At a minimum, in order to be considered under Shepard, a defendant must have the opportunity to dispute the facts contained in a state-court PSR and such PSR must thereafter be

---

[4] The government's supplemental brief appears to base its conclusions on the following assumptions: (1) "the [state] Court must have relied on the state PSR, and must have found the facts stated therein"; (2) Romero must have had the opportunity to participate in the preparation of the state PSR, to object to the facts in the PSR, and to present his own version of such facts; and (3) because the face of the state-PSR does not indicate that it was modified by the state court, it must have been adopted in its current form. (Govt. Surreply at 3-4.) Although these assumptions are more than likely accurate, the applicable standard seeks to determine, without resorting to factfinding, whether a prior conviction "necessarily rested" on facts that would warrant an enhancement. Shepard, 544 U.S. at 21. This court cannot make such a determination based solely on facts, derived from a police report, that were reproduced in a state court PSR that may or may not have been deemed credible by the state-court finder of fact.

adopted by the court as its findings of fact. Rosa, 507 F.3d at 157. Here, the government provides no evidence that such procedure was followed, and instead merely assumes that such procedure "must have" been followed. This court cannot base a significant sentencing enhancement solely on assumptions.

(4) Even if the government presented a state sentencing transcript revealing that the state court "formally adopted" the state-PSR, it remains unclear whether this would be sufficient under Shepard. Tellingly, Shepard was concerned with "conclusive records made or used in adjudicating guilt," not records created after a guilty plea or trial to aid in sentencing. Both Lockwood and Rosa recognize that state-court PSRs are created after the plea hearing and that it is often unclear whether such information was even mentioned during the guilty plea colloquy.[5]

**B. Risk that Physical Force will be used in the Commission of the Offense**

Although the court concludes that it is improper to consider the state-PSR under the modified categorical approach, the enhancement for an "aggravated felony" may still be appropriate under the categorical approach. In order to establish that such 8-level enhancement is applicable, the government must establish, without reference to any facts specific to Romero, that the state court offense at issue is the type of crime that involves "a substantial risk that

---

[5] In the alternative, even if this court concluded that the 16-level enhancement must be applied, based on the facts specific to this defendant and this case, the court would have applied a substantial downward variance. Tellingly, even under the government's version of the facts, Romero, while intoxicated, "resisted arrest" and "fought" with police officers attempting to detain him. Although this court does not condone such conduct, it appears to involve about the least amount of violence possible to qualify as a felony crime of violence. Had this defendant used the same force against a non-officer, his crime would not even qualify for a 4-level "felony" enhancement as it would have been misdemeanor "simple assault." Additionally, the offense of "simple assault" is different in nature from all of the crimes expressly listed in the guidelines that warrant a 16-level enhancement, including, murder, arson, and aggravated assault. Finally, Romero received a seven month term of active incarceration in state court, only one month more than the mandatory minimum, and he was permitted to serve such sentence on work release.

physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). The Virginia statute at issue reads as follows:

> [I]f any person commits an assault or an assault and battery against another knowing or having reason to know that such other person is a judge, a law-enforcement officer as defined hereinafter, a correctional officer as defined in § 53.1-1, a person employed by the Department of Corrections directly involved in the care, treatment or supervision of inmates in the custody of the Department, a firefighter as defined in § 65.2-102, or a volunteer firefighter or lifesaving or rescue squad member who is a member of a bona fide volunteer fire department or volunteer rescue or emergency medical squad regardless of whether a resolution has been adopted by the governing body of a political subdivision recognizing such firefighters or members as employees, engaged in the performance of his public duties, such person is guilty of a Class 6 felony, and, upon conviction, the sentence of such person shall include a mandatory minimum term of confinement of six months.

Va. Code § 18.2-57(C).

In addressing a very similar issue, the Fourth Circuit has held that a crime qualifies as a crime of violence, even if no actual touching was involved, as long as "most" violations of such statute would involve a substantial risk of injury to another. United States v. Pierce, 278 F.3d 282 (4th Cir. 2002).[6] In explaining the requirement that "most" commissions of the crime involve the risk of physical injury, the majority opinion explained:

> [O]ur dissenting colleague's position is inconsistent with available empirical data relating to the application of the North Carolina indecent liberties statute. In most instances, convictions under this statute have involved offenses committed in close proximity to victims so as to create a serious risk of physical injury. . . . <u>We have held that in determining whether a particular offense, which may be committed in both violent and nonviolent ways, is a crime of violence, "most" of the instances of the offense should present a serious risk of physical injury in</u>

---

[6] The Fourth Circuit in Pierce was analyzing whether, under the Guidelines, the crime at issue "by its nature, presented a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2 App. n.1. Here, the court is analyzing whether the offense "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). This latter definition is arguably broader than that in Pierce as it includes force used against the "property" of another.

> order to be a crime of violence. See United States v. Martin, 215 F.3d 470, 475 (4th Cir. 2000); cf. United States v. Johnson, 246 F.3d 330, 334 (4th Cir. 2001) (noting that when "most instances" do not present a risk of physical injury, the offense is not a crime of violence).

Id. at 289 (emphasis added).

The dissenting opinion in Pierce agrees that the task of the court is to "endeavor to understand whether a serious potential risk of physical injury is inherent in the range of conduct prohibited by the offense," that is, whether the "intrinsic nature of the offense" involves violence. Id. at 292. Although the dissent disagrees with the majority's application of such standard to the offense at issue in Pierce, the dissent recognizes that controlling law indicates that some crimes are "intrinsically" crimes of violence based on the substantial risk that physical confrontation will result from the commission of such crimes. Specifically, the dissenting opinion explains:

> On numerous occasions, we have found offenses to present a serious potential risk of physical injury because of the substantial risk of physical confrontation during the commission of the crime. For example, in United States v. Custis, 988 F.2d 1355 (4th Cir. 1993), we held that attempted breaking and entering of a dwelling constitutes a violent felony because of the substantial risk of confrontation. Id. at 1363-64 ("In most cases, attempted breaking and entering will be charged when a defendant has been interrupted in the course of illegally entering a home. Interrupting an intruder while breaking into a home involves a risk of confrontation nearly as great as finding him inside the house."). Similarly, in United States v. Hairston, 71 F.3d 115, 118 (4th Cir. 1995), we held that escape from custody is a violent felony because "the chance that [even] in the case of an escape by stealth, the escapee will be intentionally or unintentionally interrupted by another" created the possibility that "the escapee [will] choose to dispel the interference by means of physical force." See also . . . United States v. Mobley, 40 F.3d 688, 696 (4th Cir.1994) (holding that pickpocketing is a violent felony because of the likelihood of confrontation).

\* \* \*

> In contrast, when the generic conduct involved in a particular offense does not carry with it a serious risk of physical injury, we have held that the offense is not a crime of violence under § 4B1.2(a)(2). In United States v. Johnson, 953 F.2d 110 (4th Cir. 1992), we held that the offense of possession of a firearm by a convicted

felon is not a crime of violence.

Pierce, 278 F.3d at 292-94.

This court lacks any empirical data regarding Romero's state court offense of conviction. However, empirical data is not essential, and the Fourth Circuit has recognized that "courts must necessarily make common-sense judgments about whether a given offense proscribes generic conduct with the potential for serious physical injury to another." United States v. Custis, 988 F.2d 1355, 1363 (4th Cir. 1993). As held by the Fourth Circuit in Custis and Hairston,[7] an offense can, "by its nature" be deemed a violent crime when there is a <u>high risk that physical confrontation</u> will result during the commission of such crime. Furthermore, the Supreme Court has recently recognized that the proper test is " whether . . . an offender is significantly more likely than others to attack, or physically to resist, an apprehender, thereby producing a 'serious potential risk of physical injury.'" Chambers v. United States, 129 S.Ct. 687, 692 (2009).

Applying the above legal standard to the offense at issue, first, it appears that a significant majority of the crimes prosecuted under the statute at issue actually involve the use of force as physical assaults on officers or other officials are likely the most common fact pattern that would support a charge under the statute at issue. Stated another way, "in most cases, [assault on an official] . . . <u>will be charged</u> when a defendant": (a) physically resists arrest; (b) physically attacks a police officer, judge, or other official; or (c) otherwise acts out against a named official, thereby creating a high "risk of confrontation." Custis, 988 F.2d at 1364 (emphasis added). Second, even when considering violations of the statute that begin without the use of physical

---

[7] Although the Supreme Court's recent decision Chambers v. United States, 129 S.Ct. 687, 693 (2009) abrogated Hairston, it did so because the statute at issue criminalized not only "active" escape from confinement, but also the passive crime of failing to report for service of a sentence. Chambers, therefore, does not undermine the above analysis.

11

force, such as spitting at a police officer or judge, it appears that such crimes generally involve an offender "significantly more likely than others to attack, or physically to resist, an apprehender." Chambers, 129 S.Ct. at 692. Accordingly, just as an "escapee" that actively fled from confinement, or a pickpocketer discovered in the act, would likely use force against the individual that discovered his crime, here, an offender that offensively touches a police officer or judge is likely to use force in any ensuing confrontation in order to avoid arrest for his crime.[8] Based on the language of the statute at issue and the court's "common sense judgment," the court finds that the 8-level enhancement is appropriate as "most" offenses involving assaults and batteries on police officers, judges, etc. either involve the <u>actual use</u> of physical force, or at a minimum, a "substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b).[9]

## IV. Conclusion

As set forth in detail above, this court need not decide whether a state-court PSR that has been formally adopted by the sentencing judge is a "<u>Shepard</u>-approved" source that can be considered by a district court. Tellingly, here, the government failed to introduce any evidence

---

[8] The Virginia statute at issue requires that the offender know or have reason to know about the victim's status as an official, suggesting that such offenders generally should know that the stakes are higher regarding <u>any</u> form of assault or battery. Va. Code § 18.2-57(C).

[9] Although not discussed by the parties, the court has reviewed the Supreme Court's recent decision in <u>Johnson v. United States</u>, 130 S.Ct. 1265 (2010). First, such opinion involves a slightly different issue than the question before this court as it addresses the distinctions between the interpretation of the statutory phrases "violent force" and "physical force." Second, and even more compelling, the opinion expressly <u>declines to address</u>, for lack of preservation of the issue below, the potential application of the "residual clause" of the statute at issue. The "residual clause" that was not addressed by the Supreme Court is the portion of the statute that focuses on whether the offense at issue "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).

whatsoever to establish that the state-PSR was in fact adopted by the sentencing court or assented to by the defendant. Accordingly, this court declines to consider the facts contained therein, and the 16-level enhancement is therefore inapplicable.

Notwithstanding such finding, the court agrees with the government that a violation of the Virginia statute that enhances misdemeanor "simple assault" to a felony when the victim is a police officer, judge, or other named official, either involves the actual use of force, or, like active escape and pickpocketing, will likely result in a confrontation which creates a substantial risk that physical force will be used. Accordingly, the 8-level enhancement for an "aggravated felony" is applicable.

The defendant's actual sentence, and the justification for such sentence, were set forth on the record during the sentencing hearing on October 18, 2010. Romero's sentence is also memorialized in the written Judgment issued the following day. (Judgment, Dkt. No. 25.)

The Clerk is **REQUESTED** to send a copy of this Order to counsel for the defendant and to the United States Attorney's Office.

It is so **ORDERED**.

/s/ 
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
November  /  , 2010